**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **JORDAN LEE POULSEN,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:25-cv-00425-JCB** |
| **AARON POULSEN,** | |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

**INTRODUCTION[1]**

This case is about a contract[2] with the United States that Aaron Poulsen ("Mr. Poulsen")
signed shortly after he and Jordan Lee Poulsen ("Ms. Poulsen") were married. In this contract,[3]
Mr. Poulsen sponsored Ms. Poulsen's immigration to the United States and assumed a continuing
obligation to provide Ms. Poulsen a base level of income. Ms. Poulsen claims that Mr. Poulsen
has failed for several years to provide this promised income level and is now suing for past
support.[4] The court is considering Ms. Poulsen's motion to strike nearly all 32 affirmative
defenses that Mr. Poulsen raised to rebut Ms. Poulsen's claims ("Motion").[5] As shown below, the
court first examines its jurisdiction and then turns to Mr. Poulsen's affirmative defenses. The

---

[1] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C.
Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 10.

[2] ECF No. 1-2.

[3] *Id*.

[4] ECF No. 1.

[5] ECF No. 16.

court concludes that it has jurisdiction over the subject matter of Ms. Poulsen's claims and that

no abstention doctrine counsels against this court hearing this action. As for Mr. Poulsen's

affirmative defenses, the court strikes some but leaves others for further factual development.

BACKGROUND

**I.    Statutory and regulatory background**

If an immigrant seeking to become a permanent resident of the United States is likely to

become a "public charge,"[6] the government will deem that immigrant inadmissible. When

evaluating whether an immigrant will become a public charge, immigration authorities may

consider an affidavit of support that the immigrant's sponsor signs under 8 U.S.C. § 1183a.[7] This

affidavit of support is a binding contract between the immigrant's sponsor and the United States.[8]

The sponsored immigrant benefits from this contract, but is not a party to it.[9] By signing the

affidavit of support, the sponsor agrees to maintain the sponsored immigrant "at an annual

income that is not less than 125 percent of the Federal poverty line during the period in which the

affidavit is enforceable" ("Support Obligation").[10] In other words, if the sponsored immigrant's

income for a given year falls below 125 percent of the federal poverty line while the Support

Obligation is in place, the sponsor is contractually obligated to make up the difference.

The statute and its implementing regulations define the extent to which the Support

Obligation may be enforced and enumerate several specific events that terminate the Support

---

[6] 8 U.S.C. § 1182(a)(4)(A).

[7] 8 U.S.C. § 1182(a)(4)(B)(ii); 8 U.S.C. § 1182(a)(4)(C)(ii).

[8] 8 C.F.R. § 213a.2(d).

[9] *Id.*

[10] 8 U.S.C. § 1183a(a)(1)(A).

Obligation ("Terminating Events"). First, 8 U.S.C. § 1183a provides that the contract is enforceable "with respect to benefits provided for an alien before the date the alien is naturalized as a citizen of the United States."[11] Second, the contract becomes unenforceable if, before naturalization, the sponsored immigrant "has worked 40 qualifying quarters of coverage . . . or can be credited with such qualifying quarters."[12]

The regulations implementing the statute also list Terminating Events. The Support Obligation "terminate[s] by operation of law" when the sponsor dies[13] or when the sponsored immigrant: (1) becomes a U.S. citizen; (2) ceases to hold permanent resident status and departs the United States; (3) receives as relief from an order of removal a new grant of adjustment of status; or (4) dies.[14] Divorce, however, "does not terminate" the sponsor's Support Obligation.[15]

Although the sponsored immigrant is not a party to the contract between the sponsor and the United States, Congress expressly grants the immigrant a private right of action to enforce the Support Obligation.[16] The sponsored immigrant may enforce the Support Obligation even

---

[11] 8 U.S.C. § 1183a(a)(2).

[12] 8 U.S.C. § 1183a(a)(3)(A); *see also* 8 C.F.R. § 213a.2(e)(2)(i)(B).

[13] 8 C.F.R. § 213a.2(e)(2)(ii).

[14] 8 C.F.R. § 213a.2(e)(2)(i)(A), (C)-(E).

[15] ECF No. 1-2 at 8.

[16] 8 U.S.C. § 1183a(a)(1)(B) (declaring the affidavit of support "legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit" to the sponsored immigrant); *see also* 8 U.S.C. § 1183a(e)(1) ("An action to enforce an affidavit of support executed under subsection (a) may be brought against the sponsor in any appropriate court . . . by a sponsored alien, with respect to financial support . . . .").

though the sponsor owes the Support Obligation to the United States until one of the enumerated Terminating Events occurs.

## II.    Factual background[17]

Mr. Poulsen and Ms. Poulsen were married on March 15, 2009.[18] The next month, Mr. Poulsen signed an "I-864 Affidavit of Support Under Section 213A of the Act" ("Affidavit of Support") sponsoring Ms. Poulsen's immigration to the United States.[19] Mr. Poulsen filed for divorce seven months later.[20] The divorce was finalized in April 2013[21] and memorialized in a Divorce Decree, which required Mr. Poulsen to pay Ms. Poulsen $14,000 in alimony divided into $200 monthly payments.[22] Mr. and Ms. Poulsen considered this alimony "a settlement of the parties' I-864 issue."[23] The Divorce Decree further addresses the Affidavit of Support as follows:

### I-864 AFFIDAVIT OF SUPPORT

66. As long as [Mr. Poulsen] is paying the $200.00 per month, [Ms. Poulsen] shall not seek to enforce or collect on the I-864 Affidavit of Support in this action or in any other court of law for the time period during which the $200.00 per month is being paid, and [Ms. Poulsen] covenants not to execute in any way on the I-864 Affidavit of Support provided that the $200.00 per month is being paid. Thus, the I-864 debt currently owed is being settled and waived; <u>however, any potential future liability is not being waived</u>.[24]

---

[17] The court draws these facts from Ms. Poulsen's complaint. ECF No. 1.

[18] ECF No. 1 at ¶ 14.

[19] ECF No. 1-2 at 9.

[20] ECF No. 1 at ¶ 40.

[21] *Id.* at ¶ 41.

[22] ECF No. 1-8 at ¶ 64.

[23] *Id.*

[24] *Id.* at ¶ 66 (emphasis added).

Ms. Poulsen alleges that Mr. Poulsen ceased making the required payments after March 2018.[25]
This lawsuit followed.

### III.    Procedural background

The operative complaint alleges that Mr. Poulsen breached his Support Obligation under
the Affidavit of Support when he stopped providing alimony payments in April 2018.[26] Mr.
Poulsen answers Ms. Poulsen's claims by asserting 32 defenses, of which 30 are at issue here.[27]
Ms. Poulsen moves to strike every affirmative defense except for the first and fifth and parts of
the seventh, eleventh, and twentieth.[28] The challenged defenses may be grouped into (1) state-
law defenses,[29] (2) common-law defenses,[30] and (3) the remaining defenses.[31] Ms. Poulsen
additionally moves the court for an award of attorney's fees.[32] Mr. Poulsen's opposition argues
that: he would have waived these defenses had he not forwarded them, common-law defenses
apply to Ms. Poulsen's damages claims, a Terminating Event may have occurred, Ms. Poulsen's

---

[25] ECF No. 1 at ¶ 45.

[26] *Id*. at ¶ 63.

[27] ECF No. 11.

[28] ECF No. 16. The court notes that the Motion is more than double the allowable length and was
submitted without leave of the court to file an overlength brief. DUCivR 7-1(a)(4).

[29] Defense 2 (subject-matter jurisdiction) and defense 3 (venue). ECF No. 11 at 10-11 of 16.

[30] Defenses 12-14, 16-19, 21-23, 25, 27-29. ECF No. 11 at 12-15 of 16. This is not a complete
list of Mr. Poulsen's affirmative defenses that have their basis in common law. As discussed
below, the court leaves intact defenses that, although they may be based in common law, may
also support a finding that a Terminating Event has occurred or may reduce Ms. Poulsen's
potential damages award. *See also infra* n. 64.

[31] Defenses 4, 6-11, 15, 20, 24, 26, 30-32. ECF No. 11 at 11-15 of 16. Ms. Poulsen does not
challenge defenses 1 or 5.

[32] ECF No. 16.

income may have been above the statutory minimum during the time in question, and no attorney's fees should be awarded.[33]

After considering the parties' arguments in their written memoranda, the court provides its ruling in two parts. First, the court first reviews its own subject-matter jurisdiction and relevant abstention doctrines (i.e., *Younger* and *Colorado River*) and, in so doing, strikes Mr. Poulson's state-law defenses. Second, the court considers Ms. Poulsen's Motion and, after (I) stating the relevant review standard under Fed. R. Civ. P. 12(f), the court: (II) strikes the contract defenses sounding in common law; (III) strikes the remaining defenses that cannot succeed as a matter of law; and (IV) denies without prejudice Ms. Poulsen's request for attorney's fees.

JURISDICTION

## I.    Federal question jurisdiction

Article III of the United States Constitution extends the judicial power to "all Cases . . . arising under . . . the Laws of the United States."[34] The statutory corollary is found in 28 U.S.C. § 1331. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[35] Despite the twin phrasing, § 1331's statutory "arising under" confers less jurisdiction than does the "arising under" found in Article III.[36] To determine whether a civil action "arises under" the laws of the United States, the court

---

[33] ECF No. 18.

[34] U.S. Const. art. III, § 2, cl. 1.

[35] 28 U.S.C. § 1331.

[36] *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494-95 (1983).

reviews the allegations of the complaint.[37] Federal-question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[38] Under § 1331, federal-question jurisdiction exists where a federal statute creates the cause of action and furnishes the substantive rule of decision.[39]

Ms. Poulsen's complaint clearly pleads a cause of action under a federal statute, 8 U.S.C. § 1183a(e)(1).[40] Section 1183a(e)(1) allows a sponsored immigrant to bring a breach of contract action against their sponsor even though the contract at issue is between the sponsor and the United States. Although a sponsored immigrant may be able to enforce the contract's provisions as a third-party beneficiary to the contract, Congress opted not to leave a sponsored immigrant's enforcement right to the nuances of state law. Instead, Congress expressly recognized the sponsored immigrant's right to enforce the contract regardless of a particular state's third-party beneficiary laws. By creating the cause of action, Congress prevented potentially conflicting rulings from emerging one state at a time.[41]

---

[37] *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.").

[38] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[39] *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378-79 (2012) ("[W]hen federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331 . . . unless Congress divests federal courts of their § 1331 adjudicatory authority.").

[40] ECF No. 1.

[41] *Belevich v. Thomas*, 17 F.4th 1048, 1051 (11th Cir. 2021) ("As an initial matter, we conclude that federal law, not state contract law, governs this question. . . . This federal cause of action gives the sponsored immigrant enforcement rights that he would not necessarily have under contract law.").

Federal law also supplies the rule of decision applicable here. "Obligations to and rights of the United States under its contracts are governed exclusively by federal law."[42] Where Congress intends to provide a federal-law claim, "suits to enforce contracts contemplated by federal statutes" provide for federal claims by private parties.[43] The plain language of § 1183a shows Congress's intent to provide a federal law claim: "An action to enforce an affidavit of support . . . may be brought against the sponsor in any appropriate court . . . by a sponsored alien."[44] This grants the sponsored immigrant a right to enforce a contract to which the sponsored immigrant is not a party, regardless of any particular state's third-party beneficiary laws regarding contract enforcement. Because a federal question is presented on the face of Ms. Poulsen's properly pleaded complaint, a federal statute creates the cause of action, and a federal statute furnishes the substantive rule of decision, federal-question jurisdiction exists.[45]

---

[42] *Univ. of Texas Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014) (citation modified).

[43] *Jackson Transit Auth. v. Loc. Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15, 22 (1982) ("[S]uits to enforce contracts contemplated by federal statutes may set forth federal claims and . . . private parties in appropriate cases may sue in federal court to enforce contractual rights created by federal statutes.").

[44] 8 U.S.C. § 1183(e)(1).

[45] The Tenth Circuit Court of Appeals has not explicitly declared whether the domestic-relations exception to federal subject-matter jurisdiction applies in cases where a court's jurisdiction is based on 28 U.S.C. § 1331. *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111-12 (10th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Oct. 12, 2000). However, as "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree," and Ms. Poulsen seeks none of these, the exception does not apply to the case at bar. *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *see also Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989) ("The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim. If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable.").

## II.    *Younger* Abstention

The court next must consider whether to abstain from deciding the case. *Younger* Abstention allows, but does not compel, federal courts in exceptional circumstances to abstain from hearing a case if there is a concurrent state proceeding that "falls into one of the following categories: (1) state criminal prosecutions, (2) civil enforcement proceedings that take on a quasi-criminal shape, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function."[46] The instant case is not a criminal matter, so the first *Younger* category does not apply. The second category similarly is inapplicable because this is not a civil enforcement proceeding "akin to a criminal prosecution."[47] The third category may apply where a party seeks to enforce a state court order,[48] but Ms. Poulsen is not seeking to enforce the Divorce Decree. Her claims arise from the Affidavit of Support.

Although the Divorce Decree discusses Mr. Poulsen's obligations under 8 U.S.C. § 1183a, the Decree merely provides Mr. Poulsen a safe harbor from Ms. Poulsen's enforcement of the provisions of § 1183a so long as Mr. Poulsen paid the required amount to Ms. Poulsen each month. The Decree specifically reserves Ms. Poulsen's ability to pursue § 1183a remedies if Mr. Poulsen failed to remain in this safe harbor through monthly payments.[49] The parties

---

[46] *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (citation modified).

[47] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (citation modified).

[48] *Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *5-6 (10th Cir. 2025).

[49] ECF No. 1-8 at ¶ 66 ("[A]ny potential future [I-864] liability is not being waived.").

disagree about when Mr. Poulsen ceased making these payments,[50] but this is not an issue the court must decide now. The date the payments ceased is the date Mr. Poulsen left the safe harbor. Once outside of the safe harbor, Mr. Poulsen was exposed to § 1183a enforcement provisions in this court. Moreover, marriage and divorce are not prerequisites to maintaining an § 1183a action. Sponsors of immigrants do not have to marry the immigrant to be liable under § 1183a.[51] Therefore, the state court and its Divorce Decree are independent from the legal issue in this case arising under § 1183a. Accordingly, *Younger* Abstention does not apply.

## III.    *Colorado River* Abstention

Generally, the existence of a concurrent state court case will not bar proceedings on the same matter in federal court. There are, however, certain exceptional circumstances where "'reasons of wise judicial administration'" militate toward dismissal of a federal action in the presence of a concurrent state court case.[52] The *Colorado River* abstention doctrine counsels a federal court to dismiss a case where the prudent marshalling of judicial resources would dictate that the matter be heard in only one forum. The United States Supreme Court has offered the following factors—none of which is determinative and all of which are to receive appropriate emphasis in line with the facts of each case—to help district courts weigh whether to employ the

---

[50] *Compare* ECF No. 1 at ¶¶ 45, 63, *with* ECF No. 11 at ¶¶ 45, 63.

[51] *Greiner v. De Capri*, 403 F. Supp. 3d 1207, 1221 (N.D. Fla. 2019) ("[T]he parties' prior marital relationship was not a prerequisite to Greiner's action and simply is irrelevant to his claim insofar as many individuals who are not an alien's spouse can serve as a sponsor by signing a section 1183a affidavit."); *see also Montgomery v. Montgomery*, 764 F. Supp. 2d 328, 333 (D.N.H. 2011) (stating that sponsor's "obligations under the affidavit of support exist independently of his marriage to [the immigrant]").

[52] *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

doctrine: "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) 'the inconvenience of the federal forum'; (3) 'the desirability of avoiding piecemeal litigation'; . . . (4) 'the order in which jurisdiction was obtained by the concurrent forums'"; (5) "whether 'federal law provides the rule of decision on the merits'"; and (6) "whether the state-court proceedings adequately protect the litigants' rights."[53]

Applying these factors, the court examines whether this action properly belongs in state court, which would favor dismissal under the *Colorado River* doctrine. The first *Colorado River* factor does not apply here because the state court did not take control of property. As to the inconvenience of the federal forum, the state court that issued the Divorce Decree sits one block from the federal courthouse, which clearly shows no inconvenience for the federal forum. The risk of piecemeal litigation is likewise not an issue because the Divorce Decree is silent as to the outcome of § 1183a litigation that occurs <u>after</u> Mr. Poulsen stops making the required payments to Ms. Poulson each month. The Divorce Decree explicitly contemplates the possibility that future litigation might occur once the alimony award is satisfied, showing that the state-court divorce proceedings do not control potential § 1183a litigation beyond the scope of the alimony award.[54] The court views the fourth *Colorado River* factor (i.e., the order in which the courts obtained jurisdiction) to favor neither forum. The state court first obtained jurisdiction over pre-Divorce Decree § 1183a payments and declared them "waived,"[55] while the federal court first

---

[53] *Osguthorpe*, 705 F.3d at 1234-35 (10th Cir. 2013) (citing and quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 818 (1976) for factors one through four and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26-27 (1983) for factors five and six).

[54] ECF No. 1-8 at ¶ 66 ("[A]ny potential future [I-864] liability is not being waived.").

[55] *Id.* ("[T]he I-864 debt currently owed is being settled and waived . . . .").

obtained jurisdiction over post-Divorce Decree § 1183a enforcement. As to the fifth factor, and as discussed above, federal law provides the rule of decision under § 1183a. Finally, state courts would adequately protect these litigants' rights because Congress allows § 1183a suits to be brought in state court.

After a careful balancing of these factors, the court finds that they support hearing this case in federal court because federal law controls the issue in the operative complaint and interpreting the Divorce Decree is not required to decide this action. Thus, *Colorado River* abstention does not apply.

This discussion is relevant to the instant Motion both because of this court's responsibility to mind its own jurisdiction and because Mr. Poulson's second and third affirmative defenses assert that subject-matter jurisdiction is vested, and venue is properly laid, in the Third Judicial District Court for Salt Lake County, Utah. The analysis above shows that these defenses are inaccurate. Therefore, they are stricken.[56]

## THE MOTION

### I.    Legal standard

Fed. R. Civ. P. 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The standard for granting a motion to strike is stringent, and "the court should proceed with extreme caution in striking a pleading."[57] Only where the defense "'cannot succeed, as a matter of law, under any

---

[56] As for venue, the District of Utah is proper because it is the only federal judicial district in which the defendant resides and where a substantial part of the events giving rise to the alleged claim occurred. 28 U.S.C. § 1391(b).

[57] *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932).

circumstances'" should a court strike it.[58] This insufficiency must be "clearly apparent."[59] The motion to strike will not be granted unless "no factual issues exist that should be determined in a hearing on the merits."[60] In making this determination, courts are to rely on their own "sound discretion" and bear in mind the purpose of Rule 12(f), which is to "minimize delay, prejudice and confusion by narrowing the issues for discovery and trial."[61] Given that motions to strike are disfavored, "'any doubt as to the striking of a matter in a pleading should be resolved in favor of the pleading.'"[62] With this exacting standard in place, the court turns to the affirmative defenses at issue in the Motion.[63]

## II.    Common-law defenses

The court considers 14 defenses based in common law that Ms. Poulsen moves to strike as categorically unavailable to Mr. Poulsen in an action to enforce an Affidavit of Support.[64] Mr. Poulsen argues that "the instant case is a garden variety breach of contract case," and, thus,

---

[58] *United States v. Badger*, No. 2:10-CV-00935, 2013 WL 1309165, at *4 (D. Utah Mar. 31, 2013) (quoting *Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012)).

[59] *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009).

[60] *Id.*

[61] *Id.*

[62] *Hark'n Techs., Ltd. v. Greater Performance, Inc.*, No. 1:06CV77DAK, 2007 WL 2007579, at *1 (D. Utah July 6, 2007) (quoting *MRSI Intern., Inc. v. Bluespan, Inc.*, No. 2:05CV00896, 2006 WL 2711791, at *1 (D. Utah Sept. 21, 2006)).

[63] The court leaves intact defenses 1 and 5, which Ms. Poulsen does not challenge.

[64] The common law defenses Ms. Poulsen challenges include: "12 (waiver), 13 (equitable estoppel), 14 (failure to mitigate), . . . 16 (voluntary unemployment), 17 (statute of limitations), 18 (laches), 19 (unclean hands), 21 (accord and satisfaction), 22 (illusory contract), 23 (parole [sic] evidence), 25 (statute of frauds), 27 (unjust enrichment), 28 (good faith and fair dealing), and 29 (meeting of the minds)." ECF No. 16 at 7 of 27.

"common law contract defenses should be applicable to the contract between" Mr. Poulsen and Ms. Poulsen.[65] However, the contract at issue is the Affidavit of Support, which is between Mr. Poulsen and the United States, not between Mr. Poulsen and Ms. Poulsen. Furthermore, this is not a "garden variety" breach of contract claim. It is governed by the statutory provisions of § 1183a. In that context, common-law defenses are unavailable to Mr. Poulsen. The Terminating Events outlined in the statute and regulations provide an exhaustive list, which this court is unable to expand.[66]

Mr. Poulsen's assertion that there are a "number of cases which clearly recognize that affirmative defenses may be *alleged* in defense of a breach of contract action based on an Affidavit of Support Form I-864" is unavailing.[67] While some courts indeed have considered

---

[65] ECF No. 18 at 7 of 13.

[66] *Belevich v. Thomas*, 17 F.4th 1048, 1053 (11th Cir. 2021) ("Because we read the text as identifying an exclusive list of terminating events, we cannot add these equitable defenses to that list. Courts may craft equitable *remedies* to supplement a statutory cause of action. But we cannot create equitable *defenses* to a statutory cause of action when the text forecloses them." (emphasis in original) (citation modified)).

[67] ECF No. 18 at 8 of 13 (emphasis added).

common-law affirmative defenses in this context, these defenses are not successful.[68] In other

words, these defenses "'cannot succeed, as a matter of law, under any circumstances.'"[69]

     Mr. Poulsen also argues that common-law defenses are available to limit the damages he

owes Ms. Poulsen under the Support Obligation, even if these defenses are not available to

challenge whether the Support Obligation exists. The statute and its implementing regulations

govern both the extent of support Mr. Poulsen is obligated to provide Ms. Poulsen and the events

under which this Support Obligation terminates. Until one of these events occurs, the Support

Obligation persists. Although the parties may have agreed in the Divorce Decree that Ms.

Poulsen would not seek to enforce the Affidavit of Support so long as Mr. Poulsen made the

required monthly payments, this does not affect Mr. Poulsen's underlying Support Obligation.

     By illustration, take the argument in Mr. Poulsen's fourteenth and sixteenth affirmative

defenses that Ms. Poulsen's alleged failure to seek gainful employment should reduce the amount

Mr. Poulsen is required to pay.[70] This would, in effect, have a court hold that Mr. Poulsen's

---

[68] *See, e.g., Anderson v. United States*, No. C17-0891RSL, 2019 WL 11866989, at *4 (W.D. Wash. Feb. 25, 2019) (considering but then rejecting common law defenses). The cases Mr. Poulsen cites to support the notion that affirmative defenses *apply* in Affidavit of Support cases are equally unpersuasive. The court in *Asilonu v. Asilonu*, 550 F. Supp. 3d 282, 293 (M.D.N.C. 2021), while finding that "traditional contract defenses do not apply" in these actions, considered the same three cases that Mr. Poulsen cites for the notion that "many other courts . . . have held that affirmative defenses do apply to enforcement of support actions." ECF No. 18 at 8 of 13. The *Asilonu* Court found that the courts in those cited cases had not squarely considered the issue. *Asilonu*, 550 F. Supp. 3d at 293 (M.D.N.C. 2021) ("[I]t is unclear if the propriety of such defenses was at issue in [one of the cases], and it does not appear to be at issue [in another].").

[69] *United States v. Badger*, No. 2:10-CV-00935, 2013 WL 1309165, at *4 (D. Utah Mar. 31, 2013) (quoting *Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012)).

[70] ECF No. 11 at 12-13 of 16. The inapplicability of a "duty to mitigate" in the I-864 context is addressed directly by the Seventh Circuit Court of Appeals in *Wenfang Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012), *as amended* (July 27, 2012).

statutory obligation to support Ms. Poulsen up to 125 percent of the federal poverty line terminates if Ms. Poulsen fails to zealously seek employment.[71] The purpose of the statutory scheme is not to ensure that the sponsored immigrant obtains the highest-paying job possible; the purpose is to ensure that the sponsored immigrant does not become a public charge. The statute does so by obligating the sponsor, rather than the federal government, to provide the sponsored immigrant's income up to a certain level. Failing to obtain gainful employment is not one of the circumstances that Congress declared would terminate the Support Obligation—nor are any of the other common-law defenses. These defenses "'cannot succeed, as a matter of law, under any circumstances,'" and are stricken.[72]

### III.    The remaining defenses

Ms. Poulsen seeks to strike fourteen additional defenses—twelve in their entirety[73] and two partially.[74] The court takes each in turn, categorizing like defenses where appropriate.

Defense 4 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] has not received any means-tested public benefits."[75] Defense 8 states that

> [Ms. Poulsen]'s claims may be barred in whole or in part because
> any third party beneficiary status of the contract between [Mr.

---

[71] Contrast this with Mr. Poulsen's inquiries into Ms. Poulsen's income during the time in question, which remains a valid line of pursuit. If Ms. Poulsen earned more than 125 percent of the federal poverty line in a given year, then Mr. Poulsen is not obligated to supplement her income for that year. Inquiries into Ms. Poulsen's annual income and the amount Mr. Poulsen paid Ms. Poulsen in a given year remain active.

[72] *United States v. Badger*, No. 2:10-CV-00935, 2013 WL 1309165, at *4 (D. Utah Mar. 31, 2013) (quoting *Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012)).

[73] Defenses 4, 6, 8-9, 10, 15, 20, 24, 26, 30-32. ECF No. 11 at 11-15 of 16.

[74] Defenses 7 and 11.

[75] ECF No. 11 at 11 of 16.

> Poulsen] and the United States government only inures to the
> benefit of [Ms. Poulsen] if a third party provides means-tested
> benefits and thereafter seeks to collect said benefits which then
> requires [Mr. Poulsen] to indemnify [Ms. Poulsen] up to 125% of
> poverty line for said amounts sought to be collected by said
> party.[76]

Ms. Poulsen claims that Defense 4 is irrelevant to Mr. Poulsen's Support Obligation and that

Defense 8 does not apply to actions like this one where the sponsored immigrant, rather than the

federal government, seeks to enforce the Affidavit of Support.[77] Mr. Poulsen does not directly

refute these arguments.[78] These defenses are relevant here to inform the court's inquiry into the

income Ms. Poulsen received and the quarters she worked or can be credited with working

during the time in question.[79] Accordingly, these defenses are left intact.

Defense 6 asserts that "[Ms. Poulsen]'s claims may be barred in whole or in part because

of the lack of standing to assert the claims contained in the Complaint."[80] Given the private right

of action that Congress expressly created to allow sponsored immigrants in Ms. Poulsen's

position to enforce an affidavit of support, Ms. Poulsen certainly possesses the statutory standing

required to bring this action. Ms. Poulsen possesses Constitutional standing, as well, because she

has forwarded sufficient allegations of the injury she suffered, Mr. Poulsen's alleged causation of

---

[76] ECF No. 11 at 11 of 16.

[77] ECF No. 16 at 17-18 of 27.

[78] ECF No. 18.

[79] *Toure-Davis v. Davis*, No. CIV.A. WGC-13-916, 2015 WL 993575, at *12, *12 n.30 (D. Md. Mar. 4, 2015) (holding that the damages owed to a sponsored immigrant are offset by the value of the means-tested benefits the sponsored immigrant received); *see also* 8 C.F.R. § 213a.2(e)(2)(i)(B).

[80] ECF No. 11 at 11 of 16.

that injury, and the redressability of that injury by court-awarded relief.[81] However, Ms. Poulsen

ignores the fact that standing is assessed based on the standards applicable to each procedural

step in litigation—not solely based on the allegations in the complaint.[82] Therefore, standing can

be challenged at any time during litigation, which means that this defense cannot be stricken.

Ms. Poulsen seeks to partially strike Defenses 7 and 11. Defense 7 states

> Ms. Poulsen]'s claims may be barred in whole or in part because
> [Ms. Poulsen] may have accumulated 40 or more quarters of work
> thereby releasing [Mr. Poulsen] of any liability under the terms of
> the I-864 Affidavit of Support, or alternatively, [Ms. Poulsen] had
> the ability to accumulate 40 or more quarters of work and
> voluntarily chose not to work.[83]

The court strikes the alternative defense that Ms. Poulsen voluntarily chose not to work because,

for the reasons stated above, a duty to mitigate damages do not apply to actions to enforce an

Affidavit of Support pursuant to § 1183a.[84] The court leaves intact the remainder of Defense 7.

Defense 11 states that

> "[Ms. Poulsen]'s claims may be barred in whole or in part because
> [Ms. Poulsen]'s recovery, if any, is limited by the terms of the
> parties' Divorce Decree, *to wit:* $200 per month pursuant to the
> terms of the parties' Divorce Decree, which [Ms. Poulsen]

---

[81] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

[82] *Id.* at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.") (citation modified).

[83] ECF No. 11 at 11 of 16.

[84] *Wenfang Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012), *as amended* (July 27, 2012).

accepted as satisfaction of the I-864 obligation during the period of payment and about which [Mr. Poulsen] paid."[85]

The Divorce Decree bars Ms. Poulsen's enforcement of the Affidavit of Support while Mr. Poulsen made the required alimony payments. Exactly when that safe harbor ended due to non-payment will be decided after further discovery. Therefore, to the extent Defense 11 contends that the Divorce Decree controls this action, it is stricken. However, whether Ms. Poulsen has lived below 125% of the poverty line is an element of proving a breach of contract here and is yet unproven,[86] which means this defense cannot be stricken.

Defense 9 states that "[Ms. Poulsen]'s claims may be barred in whole or in part under the doctrine of election of remedies as said remedies were elected by [Ms. Poulsen] in the parties' final stipulation and resulting Decree of Divorce in the Utah State divorce court action."[87] Mr. Poulsen does not appear to oppose Ms. Poulsen's Motion to strike this defense and concedes that "the divorce action does not bar the instant action."[88] The court strikes this defense as inapplicable outside of the safe harbor supplied by the Divorce Decree while Mr. Poulsen continued his $200 monthly payments.

Defense 10 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] fraudulently induced [Mr. Poulsen] to execute the I-864 form under the promise of

---

[85] ECF No. 11 at 12 of 16.

[86] E. Mountain Energy, LLC v. United Mine Workers of Am., Loc. Union 1769, No. 2:16-CV-00018, 2016 WL 3747585, at *2 (D. Utah July 11, 2016) ("Under federal common law, the elements of a contract claim are: 1. The existence of a valid contract; 2. Performance of the plaintiff's obligations under it; 3. Failure of the defendant's obligations under it; and 4. Damages.")

[87] ECF No. 11 at 12 of 16.

[88] ECF No. 18 at 9 of 13.

the continuation of the marriage at which time [Ms. Poulsen] had no intention of maintaining."[89] The court leaves intact this affirmative defense because factual circumstances may exist that make this defense viable.[90]

Defense 15 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Mr. Poulsen] is entitled to various set-offs, including direct payments to Ms. Poulsen as well as in-kind payments or contributions which should be credited for their economic value."[91] The court leaves this defense intact in the event that Mr. Poulsen is later found to owe money to Ms. Poulsen because there are factual circumstances in which this alleged defense could be viable.

Defense 20 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] and [Mr. Poulsen] entered various novations which apply to the relief sought."[92] The court leaves this defense intact because discovery is necessary to resolve it. It is possible, for example, that Ms. Poulsen entered a novation such that the Support Obligation proceeds would go to a third party, which could be relevant to this action.

Defense 24 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because some or all of [Ms. Poulsen]'s claims are barred, estopped, and/or waived by the performance of [Mr. Poulsen] of his responsibilities under the subject agreements."[93] There may be facts that

---

[89] ECF No. 11 at 12 of 16.

[90] *Belevich v. Thomas*, 17 F.4th 1048, 1053 n.2 (11th Cir. 2021) ("Although we read the text to preclude non-statutory defenses like the ones asserted here, we do not address whether a sponsor may argue that an affidavit is void ab initio because, for example, it was procured by fraud or duress.").

[91] ECF No. 11 at 13 of 16.

[92] *Id.*

[93] *Id.* at 14 of 16.

show that Mr. Poulsen complied with his obligations to either preclude or limit liability if Ms. Poulsen is able to prove her claims. This defense must remain.

Defense 26 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because some or all of [Ms. Poulsen]'s claims are barred, estopped and/or waived by [Ms. Poulsen]'s own breach of the subject agreements."[94] Defense 31 states "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] left the United States on extended basis during the claimed periods."[95] The court leaves intact these affirmative defenses because there is a set of facts under which they could bar Ms. Poulsen's recovery. For example, if Ms. Poulsen ceased to hold permanent resident status and left the country, this would satisfy one of the Terminating Events under 8 C.F.R. § 213a.2(e)(2)(i).

Defense 30 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] has failed to join an indispensable party."[96] The court leaves this defense intact because further discovery may establish relevant facts that require the court to examine whether it can grant full relief without that party.

Defense 32 states that "[Ms. Poulsen]'s claims may be barred in whole or in part because [Ms. Poulsen] was married at least twice subsequent to her marriage to [Mr. Poulsen] and received corresponding support from her then spouses."[97] The court leaves intact this defense to the extent that it informs an inquiry into Ms. Poulsen's income during the time in question.

---

[94] ECF No. 11 at 14 of 16.

[95] *Id*. at 15 of 16.

[96] *Id*.

[97] *Id*.

## IV.    Attorney's Fees

Ms. Poulsen requests the award of reasonable attorney's fees pursuant to § 1183a(c).[98]

While some courts evaluating similar claims have found that they are not precluded from

awarding fees before the end of the case,[99] this court is not persuaded that such an action is

necessary. The "'basic point of reference' when considering the award of attorney's fees is the

bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win

or lose, unless a statute or contract provides otherwise."[100] The statute at issue here explicitly

states that the "[r]emedies available to enforce an affidavit of support" include "payment of legal

fees and other costs of collection."[101] The statute is silent as to whether this applies only to

prevailing parties. When "addressing statutory deviations from the American Rule that do not

limit attorney's fees awards to the "prevailing party," . . . *Ruckelshaus* is the principal case."[102] In

*Ruckelshaus*, the statute at issue authorized a court to award fees "'whenever [the court]

determines that such an award is appropriate.'"[103] Such direction is lacking here. Given

Congress's lack of direction about when to award attorney's fees in a dispute about an Affidavit

---

[98] ECF No. 16.

[99] *Shagoofa v. Eshaqzi*, No. 822CV01824, 2024 WL 1600657, at *5 (C.D. Cal. Feb. 26, 2024) (granting unopposed motion for attorney's fees and finding that "[a] party seeking enforcement of the Affidavit of Support may seek attorneys' fees prior to judgment and need not be the prevailing party."); *see also Mao v. Bright*, 645 F. Supp. 3d 805, 815 (S.D. Ohio 2022).

[100] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010) (citation modified) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983)).

[101] 8 U.S.C. § 1183a(c).

[102] *Hardt*, 560 U.S. at 254 (2010).

[103] *Ruckelshaus*, 463 U.S. at 681 (1983) (quoting § 307(f) of the Clean Air Act, 42 U.S.C. § 7607(f)).

of Support, the court in its discretion declines to award attorney's fees on a motion-by-motion basis and instead will award fees, if at all, at the end of the case. Accordingly, the court declines the Motion for an award of attorney's fees.

**ORDER**

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the Motion.[104] Accordingly, the court HEREBY ORDERS:

1. Affirmative defenses 2 and 3 are STRICKEN.

2. Affirmative defenses 12-14, 16-19, 21-23, 25, and 27-29, are STRICKEN.

3. Defenses 7, 9, 11, and 32 are STRICKEN IN PART.

4. Ms. Poulsen's request for an award of attorney's fees is DENIED.

IT IS SO ORDERED.

DATED this 9th day of December 2025.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[104] ECF No. 16.